USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/23/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
                                 :
GREAT BOWERY INC. d/b/a "TRUNK        :
ARCHIVE,"                                :
                                 :          1:25-cv-1236-GHW
                     Plaintiff,    :
                                 :       MEMORANDUM OPINION &
           -v-                   :             ORDER
                                 :
VALNET. INC.,                       :
                                 :
                    Defendant.   :
--------------------------------------------------------------- X
GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

Appropriately, in a case involving photographs of cast members from the *Star Wars* films, this opinion resolves a clone war. In June 2024, Plaintiff Great Bowery, Inc. ("Great Bowery") filed an action in Canada (the "Canadian Action") against Defendant Valnet, Inc. ("Valnet"), a Canadian company. In the Canadian Action, Great Bowery alleged that Valnet had violated Canadian copyright law when it published a number of photographs to its websites. Eight months after commencing the Canadian Action, Great Bowery filed this action in New York, alleging that Valnet's decision to publish the same images on its websites led to violations of United States copyright law. In both actions, Great Bowery seeks monetary and injunctive relief as a result of substantially the same conduct by Valnet.

Valnet had moved to dismiss this case under the doctrine of *forum non conveniens*, asking the Court to require Great Bowery to pursue its remedies in the Canadian Action, rather than in two overlapping matters at the same time. Great Bowery argues that its choice of forum merits deference, but because it first filed an action in Canada pursuing substantially the same relief as a result of substantially the same conduct as here, Great Bowery cannot legitimately argue that Canada is an inconvenient forum in which to litigate. Because Great Bowery's choice of forum warrants

little deference, and because Canada is an adequate forum in which to litigate Great Bowery's claims, Defendant's motion to dismiss is GRANTED.

## II.    BACKGROUND[1]

### A.    The Parties

Plaintiff Great Bowery is a Delaware corporation with its principal place of business in New York. Compl. ¶ 5. Great Bowery is a "full-service licensing agency representing photographers and their worldwide rights." *Id.* The photographer who took the photographs at issue is Annie Liebovitz. *Id.* ¶ 6. Ms. Liebovitz allegedly "entered into agreements with Great Bowery conveying Great Bowery the exclusive distribution, reproduction, and display rights" to the forty photographs at issue.[2] *Id.* "Other than the rights that have been exclusively assigned to Great Bowery," Ms. Liebovitz owns the copyrights to the photographs. *Id.* ¶ 16.

Defendant Valnet is a Canadian corporation with its principal place of business in Montreal, Quebec. Smagorinsky Decl. ¶ 3. Because Valnet is incorporated in Canada and has its principal place of business there, it is subject to personal jurisdiction in Canada. *Id.*; Graham Decl. ¶ 16.

Valnet is "a digital media company," which publishes content online through its websites

---

[1] In deciding a motion to dismiss for *forum non conveniens*, the Court may consider materials outside the pleadings, including any accompanying affidavits. *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 697 n.1 (2d. Cir. 2009) (citing *Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 149 (2d Cir. 1980) (*en banc*) ("The district court took the motion to dismiss on submission, based on the pleadings, affidavits and briefs of the parties—a practice long recognized as acceptable and followed from time immemorial in the busy Southern District of New York in determining forum non conveniens motions.")). Accordingly, the facts are drawn from Plaintiff's complaint, *see generally* Dkt. No. 1 ("Compl."), and the accompanying declarations and other written materials that are appended to Plaintiff's memorandum of law in opposition to Defendant's motion to dismiss, Dkt. No. 33 ("Opp'n"). Some of the facts are drawn from Defendant's declarations and other written materials expressly submitted in support of its motion to dismiss. Dkt. No. 27 ("Mem."); Dkt. No. 28 ("Edelstein Decl."); Dkt. No. 29 ("Graham Decl."); Dkt. No. 30 ("Smagorinsky Decl.").

[2] At least two courts have concluded that Great Bowery lacks standing to pursue its infringement claims with respect to photographs taken by Ms. Leibovitz because Ms. Leibovitz did not in fact give Great Bowery exclusive rights over the photographs. *Great Bowery Inc. v. Consequence Sound LLC*, No. 23-CV-80488, 2024 WL 3291101 at *1 (S.D. Fla. July 2, 2024) ("The Authorization Letter expressly states that Ms. Leibovitz retains all rights in her copyrights: 'I represent and warrant that I am the holder of *all* rights, title[,] and interest in and to the copyrighted works.'") (emphasis in original); *see also Great Bowery, Inc. v. Cascade Digit. Media LLC*, No. 6:20-CV-9, 2021 WL 3716654 (D. Or. July 15, 2021), *report and recommendation adopted*, No. 6:20-CV-9, 2022 WL 939871 (D. Or. Mar. 29, 2022). Because Defendant has not raised this argument here, the Court does not take a position on that issue at this time.

including Collider.com, Screenrant.com, TheRichest.com, Gamerant.com, TheGamer.com, and on YouTube.  Compl. ¶ 3; Smagorinsky Decl. ¶ 2.  Valnet's websites are accessible to internet users globally.  Compl. ¶¶ 7, 22.  Valnet's websites' terms of use specify that they are governed by the laws of the Province of Quebec, and that "notices of alleged copyright infringement" must be sent to Valnet's Vice President of Legal Affairs in Montreal, Canada.  Smagorinsky Decl. ¶¶ 7–9.  Valnet's website, can be viewed in both English and French, the two official languages of Canada.  *Id.* ¶ 5.

Valnet's operations are based in Canada.  Most of Valnet's employees and most of Valnet's upper-level management who are involved in "content management and corporate-decision making," including its content management team, finance team, information technology team, human resources team, administrative team, and legal team are based in Canada.  Smagorinsky Decl. ¶¶ 4, 14.  Some of Valnet's content creators and at least one member of ScreenRant's upper management, ScreenRant's "Content Director," appear to reside in New York City.[3]  Dkt. No. 33-1 ("Becker Decl.") ¶¶ 7–8, 11–13.  Any agreements between Valnet and its freelance content creators are governed by Canadian law.  Smagorinsky Decl. ¶ 13.

### B.    The Canadian Action

On June 24, 2024, Great Bowery initiated the Canadian Action against Valnet.  Dkt. No. 29-2 (the "Canadian Complaint" or "Canadian Compl."); Graham Decl. ¶ 34.  In the Canadian Action, Great Bowery asserts claims for copyright infringement under the Canadian Copyright Act with respect to Defendant's alleged "unauthorized reproduction, [] exhibition, and communication . . . of" photographs which were created by certain photographers who are represented by Great Bowery.  Graham Decl. ¶¶ 3–4.  The parties to the Canadian Action are identical to the parties in this case.  *See generally* Canadian Compl.  And thirty-eight of the forty

---

[3] In addition, Plaintiff's counsel attests that he "used the online tool check-host.net" to identify that two of Valnet's websites, Collider and ScreenRant, are hosted on United States servers in Ashburn, Virginia.  Becker Decl. ¶¶ 6, 10.

photographs at issue here are at issue in the Canadian Action.  Graham Decl. ¶ 7.

In the Canadian Action, Great Bowery seeks declaratory relief; injunctive relief; $9,800,000 in damages and disgorgement of profits or, alternatively, statutory damages in the amount of $20,000 for each infringing use; and aggravated, exemplary, and punitive damages in the amount of $100,000 for each infringing use; and attorneys' fees and costs.[4]  Id. ¶ 4; Canadian Compl. ¶¶ 1–2. Great Bowery seeks damages and injunctive relief for all of Valnet's alleged infringing uses of the photographs, without regard for whether the infringement occurred in Canada or elsewhere.[5] Nowhere in the Canadian Complaint does Great Bowery expressly limit the relief it seeks to damages arising from infringement of the photographs as a result of their publication in Canada.  See generally Canadian Compl.

Discovery in the Canadian Action is well underway.  Prior to filing a "statement of defence"—the Canadian federal court's equivalent of an answer—Valnet filed a motion requesting that Great Bowery pay into court security to cover Valnet's discovery costs.  Graham Decl. ¶ 35. On December 13, 2025, the Canadian court granted Valnet's request and ordered Great Bowery to deposit $70,000 in security for Valnet's discovery costs.  Id. ¶ 35.  On January 16, 2025, Great Bowery amended the Canadian Complaint to add additional photographs and alleged infringements. Id. ¶ 36.  On January 23, 2025, Great Bowery paid the $70,000 to the Canadian court.  Id. ¶ 35.  The parties agreed to exchange discovery documents by June 6, 2025 and were to begin conducting

---

[4] Although the "law relating to costs and fees [including attorney's fees] varies from province to province," "[a]ll Canadian jurisdictions follow the 'world rule' that costs in principle are 'in the cause.'"  H. Patrick Glenn, Costs and Fees in Common Law Canada and Quebec, in Cost and Fee Allocation in Civil Procedure 99 (2012).  Under this rule, "[t]he loser pays, subject to the discretion of the court."  Id.  The Federal Court of Canada also follows the "loser pays" rule for awarding fees and costs, as outlined in the Federal Court Rules.  Federal Court Rules, Part 11 (setting rules with respect to awarding court costs between parties to a proceeding); Federal Court Rules, Tariff B (outlining rules with respect to awarding counsel fees and disbursements).

[5] In the Canadian Action, Great Bowery specifically requests that the Canadian Court grant "an interim, interlocutory, and permanent injunction restraining the defendant, and any and all persons acting on behalf of, through or in conjunction with it from any further . . . unauthorized reproduction, public exhibition, and communications to the public of the Photographs in any form."  Canadian Compl. ¶¶ 2(b)(i)–(ii).  Great Bowery does not limit its request for injunctive relief to exclusively Canadian conduct, but rather specifically requests an injunction with respect to "any further unauthorized reproduction . . . in any form."  Id. (emphasis added).

corporate depositions after that date.  *Id.* ¶ 38.  Valnet has "already spent a considerable of time searching for and compiling documents relevant to the issues in the Canadian Action."  Smagorinsky Decl. ¶ 16.

### C.    Procedural History

On February 11, 2025—nearly eight months after initiating the Canadian Action, but just weeks after it was required to pay $70,000 as security for Valnet's discovery fees—Plaintiff filed this case, asserting copyright infringement claims with respect to forty photographs, thirty-eight of which are also at issue in the Canadian Action.  *See generally* Compl.  Just as in the Canadian Action, the photographs at issue here were taken by Ms. Leibovitz who "authorized Great Bowery . . . to enforce [her] rights, including the right to pursue" infringement claims.  Becker Decl. ¶ 4.  Plaintiff alleges that Defendant, "without permission, license, or authorization," reproduced the forty photographs "multiple times" on some of its websites, including on Collider, Screenrant, The Richest, and The Gamer—which are accessible to internet users in both the United States and Canada.  Compl. ¶¶ 3–4, 24, 26.  Valnet's decision to publish these allegedly infringing photographs on its websites was made in Canada, where Valnet's upper-level management who are involved in "content management and corporate-decision making," work and make those ultimate editorial and publication decisions.  Smagorinsky Decl. ¶¶ 4, 14.

In addition to the $9,800,000 in damages (or, alternatively, the $20,000 in statutory damages for each infringing use); $100,000 in punitive damages for each infringing use; and attorneys' fees and costs claimed in the Canadian Action, Great Bowery seeks, in this case, actual damages and disgorgement of profits, or, alternatively, statutory damages for each infringing use of the photographs, and attorney's costs and fees.  *Compare* Canadian Compl. ¶¶ 1–2, *with* Compl. at 14 ¶¶ a–d.  The damages "scheme" Defendant proposes here mirrors Defendant's request in the Canadian Action.  *Compare* Canadian Compl. ¶¶ 1–2, *with* Compl. at 14 ¶¶ a–d.  Just as in its

Canadian Complaint, here, Great Bowery seeks damages and disgorgement "of *all* of Defendant's profits" attributable to the asserted infringing activity irrespective of where publication occurred. Compl. at 14 ¶ b (emphasis added). And Great Bowery seeks an order enjoining Valnet "from *any* infringing use of Great Bowery's assigned works." *Id.* 14 ¶ c (emphasis added). Nowhere in its complaint in this case does Great Bowery expressly limit the relief it seeks to damages arising from infringement of the photographs that occurred in the United States. *See generally id.*

On May 19, 2025, Defendant filed its motion to dismiss, in which it argues that Plaintiff's complaint should be dismissed under the doctrine of *forum non conveniens* because Plaintiff's decision to file here, after filing a nearly identical action in Canada over eight months earlier, is motivated by forum-shopping and because any infringement arose in Canada where Valnet made the decision to publish and disseminate the allegedly infringing photographs on its websites. *See generally* Mem. Defendant requests, in the alternative to dismissal of Plaintiff's claims, a stay of this case pending resolution of the Canadian Action. *Id.* at 1 n.1. In the alternative, Defendant argues for partial dismissal under Federal Rule of Civil Procedure 12(b)(6) because some of Plaintiff's copyrights were not registered prior to filing its complaint and because some of Valnet's use of the photographs falls within the fair use exception.[6] *Id.* at 22. Defendant filed three declarations in support of its motion, including a declaration from Kevin Graham, a registered trademark and patent agent and attorney who has been practicing Canadian intellectual property law for over twenty-five years, attesting to certain facts with respect to the progress of the Canadian Action and to Canada's treatment of and laws on copyright infringement. *See generally* Edelstein Decl.; Graham Decl.; Smagorinsky Decl.

Plaintiff responded on June 20, 2025, arguing that dismissal is inappropriate because Plaintiff's choice of forum should be afforded "[f]ull deference" and that Canada is not an adequate

---

[6] Because the Court concludes that Plaintiff's complaint is subject to dismissal under the doctrine of *forum non conveniens*, the Court need not address Defendant's alternative arguments for partial dismissal.

alternative forum as "no Canadian court can prohibit Defendant['s] infringing conduct in the United States." Opp'n at 7, 10. Defendant filed its reply on July 11, 2025. Dkt. No. 34 ("Reply"). In its reply, Defendant distinguishes those authorities Plaintiff cites in support of its arguments that its choice of forum should be afforded near-dispositive deference and that Canada cannot adequately adjudicate copyright infringement cases which involve United States-based infringing conduct. *Id.* at 8.

## III. LEGAL STANDARD

The doctrine of *forum non conveniens*, allows a district court to "dismiss an action [when] a court abroad is the more appropriate and convenient forum for adjudicating the controversy." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). Dismissal under the doctrine of *forum non conveniens* "lies wholly within the [district court's] broad discretion." *Aenergy, S.A. v. Republic of Angola*, 31 F.4th 119, 128 (2d Cir. 2022) (quoting *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d. Cir. 2001) (*en banc*)). "[T]o guide the exercise of that discretion," the Court follows the three-step process first articulated in *Iragorri*—

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum.

*Norex v. Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005) (citing *Iragorri*, 274 F.3d at 73–75). The moving party "bears the burden of establishing that a presently available and adequate alternative forum exists, and that the balance of private and public interest factors tilts heavily in favor of the alternative forum." *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009).

## IV. DISCUSSION

As to step one, Plaintiff's choice of its home forum is entitled to little deference because Plaintiff's choice to file here appears to have been motivated by forum shopping and not genuine

convenience. As to step two, Defendant has met its burden to establish Canada as an adequate alternative forum to adjudicate Plaintiff's copyright infringement claims. And as to step three, Defendant has met its burden to show that the balance of the private and public interest factors weighs in favor of Canada.

### A.    Degree of Deference to Plaintiff's Choice of Forum

Plaintiff's choice of its home forum warrants little deference because that choice appears to have been motivated by forum shopping and not genuine convenience. There is a "strong presumption in favor of the plaintiff's choice of forum." *Norex*, 416 F.3d at 154 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)). "Usually, the greatest deference is afforded a plaintiff's choice of its home forum . . . while 'less deference' is afforded [to] a foreign plaintiff's choice of a United States forum." *Id.* (collecting cases) (internal citations omitted). But "there is no inflexible rule" and a court "does not assign 'talismanic significance' to a plaintiff's choice of its home forum. *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 73 (2d. Cir. 2003) (quoting *Alcoa S.S. Co.*, 654 F.2d at 154).

Rather, "'the degree of deference [afforded] to a plaintiff's choice of forum moves on a sliding scale' depending on the degree of convenience reflected by the choice in a given case." *Norex*, 416 F.3d at 154.

> At one end, "the greater the plaintiff's or the lawsuit's connection to the United States and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States," the greater the deference afforded. At the other end, the more the plaintiff's choice of the United States forum appears to have been "motivated by forum-shopping reasons—such as attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum," the less the deference afforded.

*Ouro Preto v. Merill Lynch, Pierce, Fenner & Smith Inc.*, 751 F. Supp. 3d 356, 366 (S.D.N.Y. 2024) (citation modified) (quoting *Iragorri*, 274 F.3d at 72). A court must "consider the totality of

circumstances supporting a plaintiff's choice of forum." *Norex*, 416 F.3d at 154.

Applying that "sliding scale" here—first, Plaintiff's choice of forum is entitled to less deference because the "considerations of convenience favor" litigating its claims in Canada. The considerations of convenience do not favor Plaintiff's choice of the United States as a forum because litigating in the United States is less convenient than litigating in the ongoing Canadian Action; because any connection to the United States is slim; and because Great Bowery first filed in Canada, undermining its argument that it is genuinely inconvenient to litigate there.

There is no dispute that Great Bowery is a Delaware corporation with its principal place of business in New York. Compl. ¶ 5. Great Bowery chose to file in its home forum; that choice is entitled to deference because it is "presumed to be convenient." *Pollux Holding Ltd.*, 329 F.3d at 71. Even though Great Bowery's choice to file in its home forum is entitled to some deference because it "serve[s] as a proxy for, or indication of, convenience," the deference afforded to Great Bowery's decision to file in its home forum is not determinative. *Iragorri*, 274 F.3d at 74.

Plaintiff's choice of its home forum is entitled to less deference because it is substantially more convenient for Great Bowery to litigate its claims in the Canadian Action, which is well-advanced, than it would be for Great Bowery to litigate the same factual issues in two separate actions. Great Bowery's claims in this case are a result of the same conduct underlying the Canadian Action—Defendant's alleged publication of forty photographs on its websites, which were accessible in both Canada and in the United States.[7] *See generally* Compl. The same conduct is at

---

[7] Here, unlike in *Marchante*, neither party argues that Valnet's liability depends on the scope of the underlying agreements between Great Bowery and Ms. Leibovitz. *See Marchante v. Reuters Am. LLC*, 736 F. Supp. 3d 209, 215–16 (S.D.N.Y. 2024) (concluding, in deciding a motion to dismiss under the doctrine of *forum non conveniens*, that even though the plaintiff asserted copyright infringement claims for "infringement within the United States by two U.S. subsidiaries of a global media company" what was "central to the dispute" was whether an agreement between the parties gave defendant a valid license to use the photographs at issue, and that, because that agreement was largely Spanish in nature, plaintiff's choice of a United States forum should be afforded less deference"). Indeed, neither party has put those documents before the Court for its review. Because there is no indication that whether Valnet's conduct infringed on Great Bowery's copyrights depends on those underlying agreements, those documents are not "central to this dispute" and are not "likely to be actually tried" in this case. *Id.*

issue in both this case and in the Canadian Action—Valnet's decision to publish the photographs in some of its online content. The conduct underlying both this case and the Canadian Action occurred in Canada, where Valnet made the decision to, and did, publish and disseminate the photographs at issue within its online content. *Murray v. Brit. Broad. Corp.*, 81 F.3d 287, 293 (2d Cir. 1996) (affirming dismissal of copyright case because the conduct occurred in England, where the products based on the disputed character were actually produced). Both parties have "already spent a considerable amount of time searching for and compiling documents relevant to the issues in the Canadian Action." Smagorinsky Decl. ¶ 16. Any discovery relevant to Great Bowery's claims in the Canadian Action would be largely identical to any discovery sought here. It is far more convenient for the parties to avoid duplicative discovery efforts. *Id.* And if Valnet—a Canadian company subject to jurisdiction in Canada—is enjoined from further infringing conduct in Canada, any remaining United States-based conduct underlying Great Bowery's claims will necessarily also stop. Because proceeding in Canada would allow Great Bowery to obtain relief in a single action, it is more convenient to proceed in that forum.

Because the connection to Canada is stronger than any connection to the United States, it is more convenient to litigate in Canada. The majority of witnesses, documents, and other sources of proof relevant to this dispute are located in Canada. *Turedi v. Coca Cola Co.*, 460 F. Supp. 2d 507, 522 (S.D.N.Y. 2006), *aff'd*, 343 F. App'x 623 (2d Cir. 2009) (cleaned up) (concluding that the plaintiff's choice of forum was not entitled to "special deference" because "the core operative facts . . . have only marginal links to the plaintiff's choice of forum"). Defendant is incorporated in Canada and its principal place of business is in Montreal, where Valnet's upper management work. Smagorinsky Decl. ¶¶ 3, 4, 14. Those[8] Valnet employees who made the strategic, editorial, and content oversight

_____

[8] Plaintiff asserts, based on a LinkedIn search, that some of Valnet's content creators and at least one member of ScreenRant's upper management, ScreenRant's "Content Director," reside in New York City. Becker Decl. ¶¶ 7–8, 11– 13. These individuals are mostly lower-level employees, who may have drafted some of the articles containing the

decisions with respect to the use of the photographs at issue are located in Canada.  *Id.*

And, finally, Great Bowery's choice to pursue its claims arising out of Valnet's publication first in Canada undermines the deference afforded to its choice to file here in its home forum. Because Great Bowery itself "first chose" to file in Canada—that decision belies any assertion that Canada is a genuinely inconvenient forum for Great Bowery to litigate in.  *Aenergy, S.A. v. Republic of Angola*, No. 20 Civ. 3569, 2021 WL 1998725 at *9 (S.D.N.Y. May 19, 2021), *aff'd*, 31 F.4th 119, 130 (2d. Cir. 2022) ("Perhaps even more telling is the fact that before coming to this Court, [Plaintiff] first chose a different forum to litigate [in].").  Accordingly, Great Bowery cannot credibly argue that litigating in Canada would pose any "significant hardship."  *Wiwa v. Royal Petroleum Co.*, 226 F.3d 88, 103 (2d Cir. 2000).

Second, again applying the "sliding scale"—any deference afforded to Great Bowery's decision to file suit in its home forum[9] is reduced because that decision appears to have been motivated by forum shopping.  *Aenergy, S.A.*, 31 F.4th at 130.  Great Bowery's decision to file here—after first filing in Canada nearly eight months earlier, but only weeks after paying security for Valnet's discovery expenses—"smacks of forum shopping rather than a genuine pursuit of convenience."[10]  *Aenergy, S.A.*, 2021 WL 1998725 at *9; *see also Base Metal Trading SA v. Russian*

---

allegedly infringing photographs yet lacked the editorial or content authority to ultimately decide to publish those articles.

[9] To the extent that Plaintiff argues that because it is at home in this forum, its choice of forum is dispositive and must be afforded "full deference," Plaintiff mistakes this Circuit's precedent.  It is well-settled that there is no "rigid rule of decision protecting U.S. citizen or resident plaintiffs from dismissal for *forum non conveniens*."  *Wiwa* , 226 F.3d at 102; *Alcoa S.S. Co.*, 654 F.2d at 157 ("What is true of the law of forum non conveniens generally [is] [] that citizenship or residence are [not] absolutely determinative factors."); *Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633, 645 (2d.Cir. 1956) ("An American citizen does not have an absolute right under all circumstances to sue in an American court.").

[10] Plaintiff argues that those cases concluding that a plaintiff's choice of forum is afforded only minimal deference where the plaintiff first filed similar claims in a foreign jurisdiction are inapposite because those cases "all involve foreign plaintiffs seeking to use the U.S. court system—the exact opposite of the situation here."  Opp'n at 8.  Again, Plaintiff's argument ignores that residency is not dispositive and ignores that the court must "consider the totality of circumstances supporting a plaintiff's choice of forum."  *Norex*, 416 F.3d at 154.  Specifically, Plaintiff's argument fails to consider that a court may afford a plaintiff's choice of forum "only minimal deference" for multiple reasons—either because the plaintiff is not at home in its chosen forum or because the plaintiff's choice of forum is motivated by forum shopping.  *See Aenergy, S.A.*, 2021 WL 1998725 ("Here, Plaintiffs' choice of forum is afforded only minimal deference.  To begin, this District is neither Plaintiff's home forum. . . .").

*Aluminum*, 253 F. Supp. 2d 681, 698 (S.D.N.Y. 2003), *aff'd*, 98 F. App'x 47 (2d. Cir. 2004) ("[H]aving pursued various remedies in the Russian court system . . . plaintiffs now seek to take their case to the United States.  Such a tactical maneuver is not protected by the deference generally owed to the plaintiffs' choice of forum.").

The Court "ha[s] ample basis to find that Plaintiff [seeks] a tactical advantage in New York" after first filing in Canada.  *Aenergy, S.A.*, 31 F.4th at 130.  Great Bowery is an experienced plaintiff—it has filed nearly fifty copyright infringement lawsuits in various jurisdictions since 2019. Edelstein Decl. ¶ 2; Dkt. No. 28-1.  Great Bowery seeks a tactical advantage because it appears to be trying to double its potential recovery with respect to both its damages and costs.  With respect to fees, Great Bowery seeks, in both this case and in the earlier-filed Canadian Action, attorney's fees and costs.  Compl. at 14; Graham Decl. ¶ 4; Canadian Compl. ¶¶ 1–2.  The Federal Court of Canada follows the "loser pays" rule for awarding attorney's fees.  *Federal Court Rules*, Part 11 & Tariff B. Under this rule, "[t]he loser pays, subject to the discretion of the court."  H. Patrick Glenn, *Costs and Fees in Common Law Canada and Quebec, in* Cost and Fee Allocation in Civil Procedure 99 (2012). United States courts do not, as a general rule, award attorney's fees to the prevailing party absent some statutory fee-shifting mechanism.  Great Bowery gains a significant tactical advantage by proceeding concurrently in both Canada and the United States by potentially "doubling" Valnet's legal fees.[11]  Smagorinsky Decl. ¶ 17.

Great Bowery also appears to be trying to double any potential damages award.  In addition to the $9,800,000 in damages (or, alternatively, the $20,000 in statutory damages for each infringing use); $100,000 in punitive damages; and attorneys' fees and costs claimed in the Canadian Action,

---

[11] Valnet's General Counsel and Vice President of Legal Affairs attests that "Valnet has already spent a considerable amount of time searching for and compiling" discovery materials in the Canadian Action and that litigating "in two jurisdictions would impose unnecessary (and duplicative) burdens on Valnet, including . . . with respect to legal fees for two sets of attorneys . . . and overlapping discovery obligations."  Smagorinsky Decl. ¶¶ 16–17.

Great Bowery seeks, in this case, actual damages and disgorgement of profits, or, alternatively, statutory damages for each infringing use of the photographs, and attorney's costs and fees. *Compare* Canadian Compl. ¶¶ 1–2, *with* Compl. at 14 ¶¶ a–d. Because Great Bowery does not limit the damages it seeks in either action to damages resulting from only conduct occurring territorially, it appears that Great Bowery is attempting to double its damages premised on the same allegedly infringing conduct.

And the timing of Great Bowery's decision to file in the United States suggests another potential tactical motivation for Great Bowery to pursue its claims in parallel in both forums. Great Bowery filed here just weeks after posting $70,000 in security for discovery in the Canadian Action. Thus, it appears that Great Bowery may be attempting to escape the direct costs of litigating this case in Canada, and to, instead take advantage of this forum's "cost-free" discovery process. Unlike the Federal Court of Canada, United States courts do not require that parties post security to cover their adversary's discovery costs. As discussed throughout this opinion, because the same conduct underlies Great Bowery's claims here and in the Canadian Action, any discovery relevant to the Canadian Action would likely also be relevant to Great Bowery's claims here. Because any discovery relevant to Great Bowery's claims is likely largely identical across both actions, Great Bowery may well be trying to conduct discovery and litigate here for free, so that it can use any relevant information in the Canadian Action. Smagorinsky Decl. ¶¶ 16–17. Great Bowery appears to be attempting to halve its costs for double the reward. Accordingly, Great Bowery's decision to file here is suggestive of a desire to obtain a tactical advantage by lowering any costs associated with litigating in Canada.

And Great Bowery obtains a tactical advantage by proceeding in the United States because it appears to be seeking additional leverage should the parties explore potential, "global" settlement. *Id.* ¶ 17. Great Bowery is a sophisticated and experienced litigant; it should know that many

lawsuits conclude because the parties are able to resolve their claims without further litigation.  Dkt. No. 28-1.  Because litigating both actions simultaneously would reduce Great Bowery's discovery costs, and because litigating both actions concurrently may result in Great Bowery doubling any damages and fees awards should it prevail on its claims, it appears that Great Bowery is seeking to threaten the prospect of such double recovery to gain additional leverage to settle both actions simultaneously.

Great Bowery argues that it has a non-tactical reason for filing duplicative lawsuits because its decision to file here was based on its inability to "obtain the full relief it needs" in Canada as any injunctive relief ordered by the Canadian court would be comparatively more limited in scope than any such relief ordered by a court in the United States.  Specifically, Great Bowery argues that "[n]o Canadian court could issue an extraterritorial injunction stopping infringement in the United States."  Opp'n at 1.  This is an unsupportable position in this case, given that the alleged infringer, Valnet, is located in Canada.  Injunctive relief is available in the Canadian Action.[12]  Graham Decl. ¶ 14.  Under the Canadian Copyright Act, a copyright owner may seek a variety of remedies, including injunctive relief.  *Id.*  And because the Canadian court has personal jurisdiction over Valnet, a Canadian citizen, it can enjoin Valnet's allegedly infringing activity "anywhere in the world."  Graham Decl. ¶ 16 (citing *Google Inc. v. Equustek Solutions, Inc.*, 2017 SCC 34 at ¶ 38).  And nowhere in the Canadian Complaint does Great Bowery limit its request for injunctive relief to exclusively Canadian conduct.  *See generally* Canadian Compl.  In fact, Great Bowery specifically requests an injunction with respect to "*any* further unauthorized reproduction . . . in *any* form."  *Id.* ¶ 2(b)(i)

---

[12] As noted above, Great Bowery specifically requests that the Canadian Court grant "an interim, interlocutory, and permanent injunction restraining the defendant, and any and all persons acting on behalf of, through or in conjunction with it from any further . . . unauthorized reproduction, public exhibition, and communications to the public of the Photographs in any form."  Canadian Compl. ¶¶ 2(b)(i)–(ii).  Great Bowery does not limit its request for injunctive relief to exclusively Canadian conduct, but rather specifically requests an injunction with respect to "*any* further unauthorized reproduction . . . in *any* form."  *Id.* (emphasis added).

(emphasis added). Great Bowery has failed to engage with Defendant's argument on this point. Nothing in this record supports that Great Bowery is foreclosed from obtaining full injunctive relief in Canada.

In sum, litigating in the United States is less convenient than litigating in Canada. And Great Bowery's decision to file here appears to have been motivated by forum shopping rather than a genuine pursuit of convenience. Accordingly, the Court affords Plaintiff's choice of New York as a forum little weight.

### B.    Availability of Canada as an Adequate Alternative Forum

Canada is adequate alternative forum because Defendant is amenable to service of process in Canada, because Plaintiff chose to litigate there previously, and because Canada "provides a robust copyright regime." *Levitin v. Sony Music Ent.*, 101 F. Supp. 376, 392 (S.D.N.Y. 2015). "An alternative forum is adequate if (1) the defendants are amenable to service of process there, and (2) if it permits litigation of the subject matter of the dispute." *Aenergy, S.A.*, 31 F.4th at 130 (citation modified). "Ordinarily, the requirement of an adequate alternative forum [is] satisfied when the defendant is amenable to process in the other jurisdiction. In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative." *Aguinda v. Texaco, Inc.*, 303 F.3d 470, 476–77 (2d Cir. 2002).

Canada is an adequate alternative forum. With respect to the first prong of the adequacy analysis—there is no dispute that Valnet is amenable to service of process in Canada, where it is incorporated, where it is subject to personal jurisdiction, and where Great Bowery has already initiated litigation against it. Mem. at 10; Edelstein Decl. at 10 ("Valnet, headquartered in Montreal, is indisputably amendable to jurisdiction and service of process there."). Accordingly, the only question before the Court is whether Canada "permits litigation of the subject matter" of Great Bowery's claims.

Canada does "permit[] litigation of the subject matter of the dispute," that is—copyright infringement. *Aenergy, S.A.*, 31 F. 4th at 130. First, Canada is competent to adjudicate, and provides adequate remedies for, Great Bowery's infringement claims. *Aenergy, S.A.*, 31 F.4th at 130; *see Wave Studio, LLC v. Gen. Hotel Mgmt. Ltd.*, 712 Fed. Appx. 88 (2d Cir. 2018) (citing *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 701–03 (9th Cir. 1995)) ("[T]he mere existence of the Singapore Copyright Act illustrates [that] Singapore law includes copyright principles.").

The record in this case supports the conclusion that Canadian courts are "entirely capable of properly adjudicating copyright ownership and infringement claims." *Wave Studio, LLC*, 712 Fed. Appx. at 88 (citing *Creative Tech., Ltd.*, 61 F.3d at 701–03). In support of its motion, Defendant submitted a declaration from a Canadian lawyer, which provides a sound description of Canadian copyright law. *See generally* Graham Decl. In Canada, copyright is governed by statute pursuant to the *Copyright Act*, RSC 1985, c C42 ("the Canadian Copyright Act"), which "sets out a sophisticated system for protection of works that are the subject of copyright and a variety of remedies for the infringement of those rights." *Id.* ¶ 8. The Canadian Copyright Act provides for remedies for copyright infringement that are substantially similar to those remedies available in the United States including: injunctive relief,[13] "delivery up or destruction," damages, or alternatively an "accounting of profits," and attorney's fees and costs. *Id.* ¶ 14 (citing *Copyright Act*, §§ 34(1), 35(1); *Federal Court Rules*, Rule 400). And, as Mr. Graham opines, because Great Bowery's claims have a connection to Canada, the Federal Court of Canada, in its discretion, may exercise jurisdiction over extraterritorial internet communications that allegedly infringe on a copyright. *Id.* ¶ 20 (citing *Soc'y of Composers, Authors & Music Publishers of Canada v. Canadian Ass'n of Internet Providers*, 2004 SCC 45 at ¶¶ 57–63).

---

[13] Plaintiff asserts, without any support, that the "Canadian court cannot enjoin conduct in the United States," and that "Canada provides no prospect for injunctive relief in the U.S. at all." Opp'n at 11. As discussed throughout this opinion, Plaintiff has failed to rebut Defendant's argument that such extraterritorial injunctive relief is available in the Canadian Action because the Canadian court has personal jurisdiction over Valnet.

"Generally speaking, the Supreme Court of Canada has recognized [that there is] a sufficient

'connection' [to Canada] for taking jurisdiction [over extraterritorial infringing conduct], [in]

situations where Canada is the country of transmission or the country of reception." *Id.*

Accordingly, the Court cannot conclude that this is one of the "rare circumstances" where the

remedies available in Canada are "clearly unsatisfactory." *Aguinda*, 303 F.3d at 476–77.

Second, Canada is an adequate alternative forum for Plaintiff's copyright infringement claims

even if the Canadian court will apply Canadian copyright law and not "affirmatively apply U.S.

copyright law."[14] *Marchante*, 736 F. Supp. 3d at 218. Canada's adequacy as a forum does not depend

on whether it offers identical causes of action or identical remedies to United States courts. It is

well-established that "the availability of an adequate alternative forum does not depend on the

---

[14] Because the Canadian Court does not need to affirmatively apply United States copyright law to be "adequate," the Court need not decide whether Canada could (or would) affirmatively apply United States copyright law to this dispute. That said—the Second Circuit has interpreted the Berne Convention for the Protection of Literary and Artistic Works (the "Berne Convention"), to which both Canada and the United States are signatories, Graham Decl. ¶ 9, as requiring the application of the substantive copyright law of the country in which the conduct giving rise to the infringement claim occurred.

 The Berne Convention "provides in pertinent part that 'the extent of protection, *as well as the means of redress afforded to the author to protect his rights*, shall be governed exclusively by the laws of the country where protection is claimed'"—commonly called the "national treatment" principle. *Murray*, 81 F.3d at 290 (citing *Creative Tech., Ltd.*, 61 F.3d at 700) (emphasis in original). The Berne Convention's "national treatment [principle] [] assures that if the law of the country of infringement applies to the scope of substantive copyright protection, that law will be applied uniformly to foreign and domestic authors." *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 89 (citing *Murray*, 81 F.3d at 287).

 As the Second Circuit has articulated, the "national treatment principal" includes "a choice-of-law rule mandating that the applicable law be the copyright law of the country in which the infringement occurred, not that of the country of which the author is a citizen or in which the work was first published." *Murray*, 81 F.3d at 290; *Creative Tech.,* 61 F.3d at 700–01. "With respect to copyright infringement [claims], . . . [the Berne Convention's] conflicts rule . . . is usually the tort rule of lex loci delicti, the law of the place where the wrong took place." Raymond J. Dowd, *Copyright Litigation Handbook* § 8:3 (2d ed.). "Under the principle of national treatment, the law to be applied to infringements occurring in the United States is U.S. domestic law." 2 Howard B. Abrams & Tyler T. Ochoa, *The Law of Copyright* § 19:30 (Oct. 2025 ed.). "In the Second Circuit, international copyrights are subject to a bifurcated choice of law analysis. When determining [ownership], a court must look to the law of the country in which the work originated. The scope of the rights that attend copyright ownership is determined by the country in which the copyright is to be enforced." Raymond J. Dowd, *Copyright Litigation Handbook* § 8:3 (2d ed.) (citing *Itar-Tass Russian News Agency*, 153 F.3d at 90) ("In a case brought in U.S. courts involving a copyright created in another country, a court may rely on the law of the foreign country to supply the rule of decision for an ownership issue, and on United States law to determine infringement issues."); *see also* Howard B. Abrams & Tyler T. Ochoa, *The Law of Copyright* § 19:30 (Oct. 2025 ed.) (asserting that "[t]he choice of law rule in *Itar-Tass* can be questioned," and concluding that it "should be rejected" because "[t]echnically, it violates the principle of national treatment"). In sum, the Second Circuit's reading of "[t]he Berne Convention's national treatment principle insures that no matter where [Plaintiff] brings [its] claim, United States copyright law would apply to exploitation . . . in this country." *Murray*, 81 F.3d at 293.

existence of the identical cause of action in the other forum, nor on identical remedies."[15]  *Aenergy, S.A.*, 31 F.4th at 130 (quoting *Norex*, 416 F.3d at 158) (internal quotations omitted).  "Nor does 'the prospect of lesser recovery . . . justify refusing to dismiss on the ground of *forum non conveniens*.'"  *Id.* (quoting *Alcoa S.S. Co.*, 654 F.2d at 159).

At various points throughout its opposition, Great Bowery argues that Canada is an inadequate forum because it will not apply United States copyright law.  Opp'n at 11.  Great Bowery's argument misstates the standard for determining whether a forum is adequate under the doctrine of *forum non conveniens*—"that the law of the foreign forum differs from American law 'should ordinarily not be given conclusive or even substantial weight' in assessing the adequacy of the forum."  *Alfadda v. Fenn*, 159 F. 3d 41, 45 (2d Cir. 1998) (quoting *Piper*, 454 U.S. at 247).  "In fact, if conclusive or substantial weight were given to the possibility of a change in law, the *forum non conveniens* doctrine would become virtually useless."  *Piper*, 454 U.S. at 250.  Because Canada has a sophisticated statutory scheme for copyright protection and because Canada provides substantially similar remedies for copyright infringement, it is immaterial that Canada may not affirmatively apply United States copyright law.

And Plaintiff's choice to pursue its claims first in Canada undermines Plaintiff's argument that the Federal Court of Canada is not capable of adjudicating its infringement claims or providing appropriate remedies.  *Paulo v. Agence France-Presse,* No. 21 Civ. 11209, 2023 WL 2873257 (S.D.N.Y. Jan. 19, 2023), *report and recommendation adopted*, No. 21 Civ. 11209, 2023 WL 2707201 (S.D.N.Y. Mar. 30, 2023), *aff'd on other grounds*, 2025 WL 3002388 (2d Cir. Oct. 27, 2025) ("The fact that [the

---

[15] Plaintiff argues that Mr. Graham's attestations on Canadian law are insufficient to show that Canada is an adequate forum because his declaration "says nothing about achieving the same relief as is available in the U.S."  Opp'n at 11.  Plaintiff's argument misstates the relevant standard because Canada's adequacy as a forum "does not depend" on the existence of "the same" or "identical remedies."  *Paulo*, 2023 WL 2873257 at *17 (concluding that Portugal was an adequate alternative forum for plaintiff's copyright infringement claims and rejecting plaintiff's argument that "Portuguese law 'does not contain provisions allowing causes of action or remedies precisely equivalent to those he asserts in this action'" (citation modified)).

plaintiff] has chosen Portuguese courts not once but twice undermines [plaintiff's] assertion that Portugal is not an adequate forum."); *Bohn v. Bartels*, 620 F. Supp. 2d 418, 430 (S.D.N.Y. 2007) (concluding that "an [adequate] alternative forum exists in Portugal" because plaintiff "has an action pending against the same parties for the same claims" there); *Base Metal Trading SA*, 253 F. Supp. 2d at 704 (finding that Russia was an adequate alternative forum where, plaintiff "pursued relief in the Russian courts until the results were not to their liking").  Because Great Bowery sued Valnet in Canada as recently as last year, Great Bowery "has already demonstrated its own confidence" that Canada is as an adequate alternate forum.  *Wave Studio, LLC v. Gen. Hotel Mgmt. Ltd.*, 12-CV-9239, 2017 WL 972117 at *7 (S.D.N.Y. Mar. 10, 2017), *aff'd*, 712 Fed. Appx. 88 (2d Cir. 2018).

Plaintiff cites to the Federal Circuit's decision in *Halo Creative* in support of its argument that Canada is not an adequate forum for its infringement claims.  *See generally Halo Creative & Design Ltd. v. Comptoir Des Indes Inc.*, 816 F.3d 1366 (Fed. Cir. 2016).  But Plaintiff's case is factually distinguishable from *Halo Creative* for three reasons.  *Id.*  First, unlike in *Halo Creative*, at least some of the conduct underlying Great Bowery's claims occurred in Canada.  In *Halo Creative*, "[t]here [was] no evidence in the record that any act of alleged infringement occurred in Canada."[16]  *Id.* at 1372. Here, by contrast, there is "evidence of [a] predicate act . . . that occurred in Canada,"—the online publication of the forty photographs on Defendant's websites.  Valnet's decision to reproduce the photographs was made in Canada, where Defendant's upper-level management work and where decisions with respect to editing and content publication are made.  Smagorinsky Decl. ¶¶ 3, 4, 14. Canada was where Defendant initially made the decision to, and did, publish any content reproducing the photographs.  *See Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*, 145 F.3d

---

[16] At oral argument, when asked "whether the record shows if any infringing act occurred in Canada, counsel stated, 'I will admit that the record did not get that specific. . . .  The presumption was if you have a Canadian company, the courts of Canada are going to have jurisdiction over it, and that's as far as the analysis went.'"  *Halo Creative*, 816 F.3d at 1372 n.6.

481, 492 (2d Cir. 1998) (noting that although the film was produced in the United States, the alleged infringement occurred abroad, where the film was actually distributed).  This Canadian conduct— the same conduct which underlies Great Bowery's claims here—is ultimately what resulted in the publication of the photographs on websites accessible around the world, including in the United States.  Compl. ¶ 4; Opp'n at 3, 7 ("Defendant operates [a] worldwide enterprise.").  As Plaintiff admits, some "infring[ment] [is] in Canada," Opp'n at 17, because otherwise, it would not have filed the Canadian Action.

Second, here, unlike in *Halo Creative*, Valnet has established a record demonstrating that the Federal Court of Canada is an adequate forum for Plaintiff's claims.  In *Halo Creative*, the parties did not submit "any expert testimony regarding the adequacy of the Federal Court of Canada as an alternative forum."  *Halo Creative*, 816 F.3d at 1368, 1372 ("The only evidence appellees submitted to the district court was a printout of a webpage from the site of the Federal Court of Canada, simply showing that the Federal Court of Canada has jurisdiction to adjudicate 'intellectual property rights.'").  Here, the Court specifically ordered that Valnet must "support its motion with a sworn declaration from foreign counsel [and that] [t]he assertions in any such declaration should be supported with citations to applicable foreign law."  Dkt. No. 25.  In response, Valnet submitted a declaration from an Ontario-based intellectual property lawyer who has over twenty-five years of litigation experience and who attests to Canada's treatment of copyright infringement cases.  Graham Decl. ¶¶ 1–2.  Mr. Graham's declaration accurately describes Canadian copyright law, which, as described above, demonstrates that Canada is an adequate alternative forum for Plaintiff's claims.

Third, unlike in *Halo Creative*, Great Bowery can obtain extraterritorial relief in the Canadian Action.  Because the Canadian court has personal jurisdiction over Valnet, the Canadian court can grant an injunction enjoining Valnet's allegedly infringing conduct "anywhere in the world,"

including in the United States. *Id.* ¶ 16 (citing *Google Inc. v. Equustek Solutions, Inc.*, 2017 SCC 34 at ¶ 38).

Finally, the Court rejects Plaintiff's argument that "this District is the best and only forum suited to hear this case because the United States is the only appropriate jurisdiction for adjudicating U.S. copyright claims." Opp'n at 10. Plaintiff's argument that the "only" adequate forum for its copyright infringement claims is the United States is foreclosed by Second Circuit precedent. *Forum non conveniens* dismissal is available for copyright infringement claims brought under United States law—the Second Circuit has affirmed district court decisions dismissing copyright infringement cases under the doctrine. *See e.g.*, *Wave Studio, LLC v. General Hotel Mgmt. Ltd.*, 712 Fed. Appx. 88 (2d Cir. 2018) ("The record contains no reason to conclude that Singapore courts are not entirely capable of properly adjudicating copyright ownership and infringement claims."); *Overseas Media, Inc. v. Skvortsov*, 277 Fed. Appx. 92 (2d Cir. 2008) affirming district court's *forum non conveniens* dismissal of copyright infringement claims); *Murray*, 81 F.3d at 287 (same).

Plaintiff argues that the United States is the only forum for its claims because the "Second Circuit has long held" that the Copyright Act's, 28 U.S.C. § 1338(a) ("§ 1338(a)"), jurisdictional rule "gives federal courts *exclusive* jurisdiction to enforce its provisions." Opp'n at 10 (citing *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 348 (2d Cir. 2000) (citing § 1338)). In so arguing, Plaintiff places undue reliance on the Second Circuit's use of the word "exclusive" in *Bassett* and misreads this Circuit's precedent interpreting § 1338(a)'s jurisdictional rule. *Creative Tech., Ltd.*, 61 F.3d at 700 ("[Plaintiff] contends that the *forum non conveniens* doctrine is inapplicable to its claim because 28 U.S.C. § 1338(a) invests the federal district courts with 'exclusive' jurisdiction over claims arising under the United States Copyright Act . . . [Plaintiff's] argument is without merit.").

The plain meaning of § 1338(a)'s text does not support Great Bowery's argument that Canada is barred from adjudicating copyright infringement cases arising under United States

copyright law. *Creative Tech., Ltd.*, 61 F.3d at 703. 28 U.S.C. § 1338(a) provides that "[n]o *State* court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to . . . copyrights." 28 U.S.C. § 1338(a) (emphasis added). Section 1338(a)'s text "clearly grants United States district courts jurisdiction over copyright claims 'exclusive of the courts of the states,' not exclusive of the courts of foreign nations." *Creative Tech., Ltd.*, 61 F.3d at 703. Nothing in § 1338(a)'s text supports Great Bowery's argument that the Court should read that provision "as a grant of jurisdiction exclusive of foreign courts as well as courts of the fifty states." *Id.* Nor does anything in § 1338(a)'s text suggest that such cases are unsuitable for *forum non conveniens* dismissal. The Court declines to adopt Great Bowery's "strained interpretation of 28 U.S.C. § 1338(a)." *Id.*

Accordingly, because Defendant is amenable to service of process in Canada; because Canada can adjudicate the subject matter of Great Bowery's claims; because Canada's adequacy as an alternative forum does not depend on either the availability of identical causes of action or remedies; and because the Court rejects Great Bowery's strained interpretation of § 1338(a), Defendant has met its burden to show that Canada is an adequate alternative forum for Great Bowery's copyright infringement claims.

## C. Public Interest and Private Interest Factors

"Even where the degree of deference to a [] plaintiff's choice of forum is reduced at step one, the action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable." *Aenergy, S.A.*, 31 F.4th at 132 (citation modified) (quoting *Bigio v. Coca-Cola Co.*, 448 F.3d 176, 179 (2d Cir. 2006)). Because Plaintiff's choice of forum is afforded only minimal deference, and because Canada is an adequate alternative forum, the Court "must [now] balance a series of factors involving the private interests of the parties in maintaining the litigation in the competing fora and any public interests at stake," commonly called "the *Gilbert* factors." *Wiwa*, 226 F.3d at 100 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947)). Both the

public and private interest factors weigh in favor of dismissal.

## 1. The private interest factors

The private interest factors weigh heavily in favor of dismissal.  The private interest factors include:

> the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; the possibility of view of premises, if view would be appropriate to the action; and all other practice problems that make trial of a case easy, expeditious and inexpensive.

*Aenergy, S.A.*, 31 F.4th at 133 (quoting *Iragorri*, 274 F.3d at 73–74 (quoting *Gilbert*, 330 U.S. at 508)).

First, the "overwhelming proportion of the" evidence, witnesses, and proof relevant to this case "is concentrated in Canada,"[17] which weighs in favor of dismissal.  *Overseas Media, Inc. v. Skvortsov*, 441 F. Supp. 2d 610, 618 (S.D.N.Y. 2006), *aff'd*, 277 Fed. App'x. 92 (2d Cir. 2008) (dismissing copyright infringement case where witnesses and evidence were based in Russia). Valnet's headquarters, primary decision-makers, and witnesses central to its content publications practices all live and work in Canada.  Smagorinsky Decl. ¶¶ 3–4, 14.  Canada is where any decision to use the allegedly infringing photographs was made and where the actual dissemination of any content with those photographs occurred and originated from.  *Id.*; *Murray*, 81 F.3d at 293–94 ("[T]he forum in which [the] actual infringement of Murray's putative copyright has occurred is not the United States but England. . . .  In virtually all respects, the connection of this case to the United

---

[17] Great Bowery does not dispute that most of the relevant witnesses are based in Canada.  But Great Bowery does argue that Defendant's identification of potential witnesses is "completely conclusory," and that Defendant failed in not "provid[ing] the court with a specific list of probable witnesses who will be inconvenienced by the current forum and a general statement concerning the witnesses' testimony."  Opp'n at 14–15.  But Valnet was not required to "submit affidavits identifying the witnesses [it] would call and the testimony these witnesses would provide if the trial were held in the alternative forum."  *See Florian v. Danaher Corp.*, 69 Fed. App'x 473, 475 (2d Cir. 2003) (quoting *Piper*, 454 U.S. at 258)).  "Such a requirement 'would defeat the purpose of [its] motion."  *Id.* (quoting *Piper*, 454 U.S. at 258).  Rather, "[a]ll that is required is that the defendant[] provide[s] enough information to enable the District Court to balance the parties' interests."  *Id.* (quoting *Piper*, 454 U.S. at 258); *see also Fitzgerald v. Texaco, Inc.*, 521 F.2d 488, 451 n.3 (2d Cir. 1975) ("[T]he district court in this case [did not] abuse its discretion, on this motion to dismiss for *forum non conveniens*, in failing to require detailed disclosures by the defendants of the names of their proposed witnesses and the substance of their testimony.").

States is as tenuous as its connection to the United Kingdom is strong . . . the district court did not abuse its discretion in finding that the public interest factors militated in favor of dismissal."); Accordingly, most documentary evidence[18] would likely also be in Canada, where Valnet is based.[19]

Based on a LinkedIn search, Great Bowery identifies some lower-level Valnet employees who work at two of Valnet's websites who reside in the United States and in this District.[20] Becker Decl. ¶¶ 7–8, 11–13. That certain lower-level employees may reside in this District "does not, on balance, outweigh the overwhelming inconvenience of continuing litigation in New York" because the most relevant witnesses reside and work in Canada. *Beekmans v. J.P. Morgan & Co.*, 945 F. Supp. 90, 95 (S.D.N.Y. 1996).

Second, the "Court's inability to compel overseas non-party witnesses to attend a trial favors adjudication" in Canada. *Ouro Preto v. Merrill Lynch Pierce, Fenner & Smith Inc.*, 751 F. Supp. 3d 356, 379 (S.D.N.Y. 2024). Plaintiff "identif[ies] as potential" [foreign third parties] witnesses beyond the scope of this Court's subpoena power," *id.*—Valnet's "former employees, freelance authors, business partners, or accountants," Mem. at 15. Because those foreign non-party witnesses "reside in Canada, [] they are not subject to compulsory service . . . if they are unwilling to testify" in this case, and obtaining any testimony from those witnesses while litigating in this District would

---

[18] It appears that that some documentary evidence in this case may be in French and will require translation. The same may be true for some of the relevant witnesses. *Aenergy, S.A.*, 2021 WL 1998725 at *18 ("The Court thus would have to rely heavily on the accuracy of translations to assess much of the evidence here. This ordeal would be a costly, difficult endeavor [which] . . . weighs 'strongly in favor' of dismissal on *forum non conveniens* grounds.").

[19] Because most of the documentary evidence is likely stored electronically, the location of documentary evidence does not weigh heavily in favor of either Canada or the United States.

[20] To advance Plaintiff's argument, the Court assumes, without deciding, that some of Valnet's content creators do reside in the United States. The Court notes, however, that LinkedIn data is self-reported, and that the information provided by Plaintiff has not been shown to be either complete or accurate. Indeed, Valnet disputes the accuracy of the LinkedIn data—"Valnet only has 11 employees dedicated to working on the Collider Website (including individuals who work on the Collider Website along with other Valnet websites) so it is not possible that '162 of the 258 employees associated with Collider live within the United States,' as Plaintiff contends." Dkt. No. 35 ¶ 7 (noting that some of the individuals referenced by Plaintiff are not Valnet employees but LinkedIn "associated members"). The Court need not resolve this factual dispute, because even if some of those individuals are Valnet employees, they are lower-level content creators whose testimony is unlikely to be relevant to the issues in dispute because they lacked control over any ultimate publication and dissemination decisions.

unnecessarily complicate both discovery and trial. *See Florian v. Danaher Corp.*, No. 300-CV-897, 2001 WL 1504493 at *4 n.8 (D. Conn. 2004), *aff'd*, 69 Fed. App'x 473 (2d Cir. 2003). Great Bowery suggests that the unavailability of compulsory process does not weigh in favor of dismissal because the parties can still obtain testimony from any Canadian witnesses through letters rogatory under the Hague Convention. Opp'n at 15. While that alternative is available, obtaining testimony through letters rogatory is both burdensome and costly and may prolong the litigation. *Florian*, 2001 WL 1504493 at *4 n.8 ("However, execution of such letter requests with respect to such witnesses may prolong this litigation, making it unnecessarily costly."). "[P]roceedings under the Convention [] 'entail[] significant amounts of time even in ordinary cases, and far more in complicated litigation." *Ouro Preto*, 751 F. Supp. 3d at 379 (quoting *Do Rosario Veiga v. World Meteorological Org.*, 486 F. Supp. 2d 297, 306 (S.D.N.Y. 2007)).

"Even if the Court could compel some witnesses to come to New York to testify, or they agreed to do so, this would be very costly." *Aenergy, S.A.*, 2021 WL 1998725 at *17. Great Bowery suggests that any Canadian witnesses would be available to testify here because "it is not difficult at all to get witnesses from Montreal to New York City." Opp'n. at 15. The Court affords this argument little weight. It is more convenient for witnesses to testify in the forum they are already in than it would be to shuttle those witnesses elsewhere. The cost of transporting even willing witnesses will be "significant" if this case was tried here rather than in Canada. *See Florian*, 2001 WL 1504493 at *4.

Third, the existence of the parallel Canadian Action, which involves identical parties and nearly identical claims, and which is well-advanced and in the process of discovery, weighs in favor of dismissal. *Ocean Shelf Trading Inc. v. Flota Mercante Grancolombiana S.A.*, 638 F. Supp. 249, 253 (S.D.N.Y. 1986) ("The pendency of an action in Colombia is another factor to consider."). Allowing both actions to proceed in parallel is a profoundly inefficient use of both judicial and party

resources. The Canadian Action is well into discovery: Great Bowery has paid $70,000 into court security to cover Valnet's anticipated discovery costs, Graham Decl. ¶ 35; the parties agreed to exchange documents no later than June 6, 2025; *id.* ¶ 38, and the parties were to begin conducting corporate depositions thereafter, *id.* Both parties have "already spent a considerable amount of time searching for and compiling documents relevant to the issues in the Canadian Action." Smagorinsky Decl. ¶ 16. Any discovery relevant to Great Bowery's claim in the Canadian Action would be largely identical to any discovery sought in this case. The Court sees no benefit in having the parties engage in duplicative discovery here. *See C-Cure Chem. Co., Inc. v. Secure Adhesives Corp.*, 571 F. Supp. 808, 822 (W.D.N.Y. 1983) ("The private factors here point strongly to Ontario as the appropriate forum . . . the Canadian litigation may well be further advanced than in the instant case . . . there has been significant duplication of legal efforts on behalf of all the parties on both sides of the border.").

The pendency of the Canadian Action also raises issues with respect to the issuance of any judgment against Valnet. Because Great Bowery does not limit the relief it seeks in either case, proceeding on parallel tracks raises the possibility of an impermissible double recovery based on the same underlying facts. And, as Defendant identifies, because the two actions involve the same underlying conduct, litigating the two actions concurrently raises the possibility of inconsistent judgements. Mem. at 16. Assuming that this case was to proceed, any judgment obtained here is not automatically enforceable against Valnet in Canada because Great Bowery would first need to have that judgment "homologated," that is, recognized by a Canadian court. Graham Decl. ¶ 33. Because Valnet is headquartered in Quebec, any judgment obtained in this action would need to be "homologated" in Quebec, which doubly complicates matters because Quebec is a civil law jurisdiction. *Id.* Accordingly, because most of the witnesses and evidence are located in Canada and because litigating here risks duplicative litigation, the private interest factors weigh heavily in favor of dismissal.

### 2. The public interest factors

The public interest factors weigh in favor of dismissal because Canada has a stronger interest in adjudicating this dispute. Canada has a stronger interest in adjudicating Great Bowery's claims because there is a pending parallel action proceeding in a Canadian Court and because the decision to use the photographs at issue was made in Canada by a Canadian entity. The public interest factors include:

> the administrative difficulties flowing from court congestion; the local interest in having controversies decided at home; the interest in having the trial in a forum that is familiar with the law governing the action; the avoidance of unnecessary problems in conflict of laws or the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Id.* (quoting *Aguinda*, 303 F.3d at 480).

Because neither party argues that the "court congestion" favors either Canada or this District, the Court accepts that this factor is neutral. The remaining factors weigh in favor of dismissal. Canada has an interest in deciding this case, because, as discussed throughout this Opinion, at its heart this dispute asserts claims based on conduct occurring in Canada by a Canadian entity that is alleged to have violated Canadian law. The Court acknowledges that the original copyright holder is Ms. Leibovitz, an American, who purportedly assigned her rights to Great Bowery, which organized in the United States. And there is no doubt the United States has an interest in enforcing the intellectual property rights of its citizens and that the identity of the copyright holder here weighs against dismissal. In most other "respects, [however], the connection of this case to the United States is as tenuous as its connection to [] [the alternative forum] is strong." *Murray*, 81 F.3d at 293–94. Any decision to use the photographs by Defendant occurred in Canada; Defendant's dissemination of the infringing photographs in its content originated in Canada; witnesses relevant to those decisions live and work in Canada; and any relief Plaintiff may obtain will need to be enforced in Canada. All these facts favor Canada as a forum and weigh in

favor of dismissal.

And Plaintiff chose to file first in Canada.  "Although the existence of related litigation in another forum is not a specific factor to be considered under the *forum non conveniens* analysis, the possible duplication of effort by another court hearing the same claims involving the same parties is a matter of public interest because it likely imposes an unnecessary burden on this Court and on New York jurors."  *Bohn*, 620 F. Supp. 2d at 433; *but see Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 148 (2d. Cir. 2000).[21]  Simply put, "[i]t is a waste of judicial resources to have two actions pending at once."  *Ocean Shelf Trading Inc.*, 638 F. Supp. at 253.  The Canadian Action, which involves the same parties, and (almost) the same photographs, will likely proceed to trial earlier than this case.  New York jurors would be burdened by deciding issues that have likely already been decided by a competent court.  Accordingly, the public interest factors also weigh in favor of dismissing this action under the doctrine of *forum non conveniens*.

### D.    Conditions of Dismissal

With appropriate conditions established as safeguards, this case is properly subject to *forum non conveniens* dismissal.  As referenced throughout this Opinion, the Canadian Action involves only thirty-eight of the forty allegedly infringing photographs at issue in this case.  For the same reasons that proceeding along parallel tracks undermines judicial economy, it would make little sense to dismiss this action under the doctrine of *forum non conveniens* if Plaintiff would have to file a second lawsuit to challenge Defendant's use of the remaining two photographs.  Valnet attests that Great Bowery could "amend the Canadian Claim to add those two photographs with the consent of Valnet

---

[21] In *Guidi*, the Second Circuit held that a district court errs in weighing the public interest factors, by affording near-dispositive weight to the existence of parallel litigation if "the parties in the related action are completely different from the parties at bar."  *Guidi*, 224 F.3d at 148.  However, the Second Circuit explicitly declined to hold that "the existence of related litigation in another forum should never be considered" when balancing the *Gilbert* public interest factors.  *Id.*  In so declining to hold, the Circuit reasoned that the existence of related litigation "is not listed as a relevant factor in the *forum non conveniens* analysis laid out in *Gilbert*," and is more properly implicated when a district court balances the parties' private interests.  *Id.*

or leave of the Court, which can be sought at any time." Graham Decl. ¶ 7. Accordingly, the Court conditions dismissal of this action on Valnet's agreement to consent to Great Bowery amending the Canadian Complaint to add the additional two allegedly infringing photographs and on Valnet's agreement to waive any statute of limitations defense it may have as to those two photographs. *See Calavo Growers of Cal. v. Generali Belgium*, 632 F.2d 963, 968 (2d Cir. 1980).

## V.   CONCLUSION

For the reasons stated herein, the Court finds that, on these facts, dismissal of this action is warranted under the doctrine of *forum non conveniens*. Accordingly, Defendant's motion to dismiss is GRANTED, subject to the following conditions: (1) Defendant consents to Great Bowery amending the Canadian Complaint to include the remaining two photographs; and (2) Defendant waives any statute of limitations defenses that have arisen since the commencement of the Canadian Action with respect to the addition of those two photographs.

The Clerk of Court is directed to enter judgment for Defendant, to terminate the motion pending at Dkt. No. 26, and to close this case.

SO ORDERED.

Dated: November 23, 2025

_____
GREGORY H. WOODS
United States District Judge

29